# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF GEORGIA

# ATLANTA DIVISION

**JEFFREY D. COOPER,**

**Plaintiff,**          **CIVIL ACTION NO:**

_____

**Vs.**

**CITY OF KENNESAW, GEORGIA**          **JURY TRIAL DEMANDED**

**Defendant**

## COMPLAINT

Plaintiff Jeffrey Cooper ("Cooper") files this Complaint against the City of Kennesaw, Georgia ("Kennesaw") showing the Court as follows:

1.

Cooper is a citizen of Georgia. He is a resident of 325 Stone Castle Pass SW Atlanta, GA 30331.

2.

City of Kennesaw, Georgia is a municipal corporation that was established in 1887, by an 1887 charter which changed the municipal Corporation's name to Kennesaw from "Big Shanty." The City of Kennesaw is located in Cobb County

with the address 2529 J.O. Stephenson Ave., Kennesaw, GA 30144 in the Atlanta

division of the United States District Court for the Northern District of Georgia.

3.

This case involves Federal questions under Title VII, 42 USC 2000e, and 42

USC 1983, and therefore the court has jurisdiction over this matter pursuant to 28

USC 1331.

4.

Title VII contains its own venue provision, 42 USC 2000e-5(f)(3) which is

the exclusive venue provision for all Title VII actions. Under this provision, venue

is proper in the district where plaintiff worked, and where the plaintiff experienced

the discrimination. All of the relevant events in this case occurred in Cobb County,

Georgia.

## FACTS

5.

Cooper was hired by the City of Kennesaw on December 9, 2013. He at first

was a part time custodian within the City's building services department. In

approximately July 2015, Cooper became a full-time Parks Worker I for the city of

Kennesaw. Cooper was been promoted to a crew leader for the Parks and Recreation department in April 2016.

6.

After receiving the promotions noted, and receiving generally good feedback on his performance up until February 2018, Cooper then began to be supervised by Billy Warren, who became Operations Manager for the Kennesaw Parks and Recreation Department. Warren is black and he has served in Buildings Operations for the City of Atlanta and Fulton County government, and apparently for the City of Morrow as it's Public Works Director.

7.

Cooper is white.

8.

Immediately upon arriving in his position as Operations Manager for the Kennesaw Parks and Recreation Department, Warren began harassing Cooper through actions he took as Kennesaw's Operations Manager of Parks and Recreation Department against Cooper. The City of Kennesaw endorsed Warren's harassment of Cooper, and Warren's campaign of formally documenting petty offenses that Cooper had supposedly committed.

9.

The City of Kennesaw and Warren's adverse employment actions against Cooper were based in part on Cooper's being a member of the Caucasian race. Because Warren intentionally relied on Cooper's race in choosing to single out Cooper for extraordinary discipline, Warren's adverse employment actions against Cooper violated Title VII, and those actions were actions by the city of Kennesaw and violations by the City of Kennesaw of Title VII.

10.

Cooper's race need not be the sole or primary cause of the adverse employment actions the City of Kennesaw inflicted upon him for them to be actionable under Title VII. Indeed, even if the city of Kennesaw points to some other factor that it contains played a more important factor in the decisions to take adverse employment actions against Cooper, this is no defense that prevails against the Title VII claim, because Cooper's race was a but-for cause of the unwarranted discipline Cooper received.

11.

Warren's harassment of Cooper included:

Verbal warnings for minor infractions on February 27, 2018 and March 20, 2018, a written write up on April 17, 2018, another verbal counseling on

December 5, 2018 falsely accusing Cooper of damaging a truck and then more counseling on December 10 and 11th 2018, December 27, 2018, December 31, 2018, and January 14, 2019, all over petty issues.

12.

The individual harassment Cooper suffered was quite frequent. He was singled out specifically by Warren as a white man for constant unwarranted scrutiny and constant threats of firing Cooper. The conduct of the City of Kennesaw must be evaluated with reference to its actions committed through African American supervisor, Warren, relative to the individual white man Cooper.

13.

The City of Kennesaw is vicariously liable to Cooper for the actions of Warren because Warren took multiple tangible employment actions, all adverse against Cooper, specifically as Cooper supervisor, which would not have been taken but for Cooper's race.

14.

Cooper complained to Kennesaw's HR department and did complain that the treatment he was receiving was based on race. In response, Warren retailiated by increasing the number of issues he had with Cooper's work and the frequency of their negative interactions day by day, week by week, month by month. In these

interactions, Warren increased the volume and the intensity of the conversations and included abundant cursing at Cooper.

15.

The discipline Cooper received was not legitimate, and Warren's raising of the stakes of discipline to multiple threats to fire Cooper made it intolerable for Cooper to continue working under Warren. Therefore, facing illegitimate charges and suffering intolerable anxiety in response to the abusive, threatening way Warren delivered those charges, Cooper resigned on January 14, 2019.

16.

Cooper's forced resignation was a constructive discharge of Cooper by the City of Kennesaw.

17.

Cooper had let it be known to the city of Kennesaw that he would be resigning as of February 1, 2019 because of the ongoing illegitimate issues Warren was raising by a memo dated January 11, 2019. The intense response Warren had to the memo caused Cooper to accelerate his resignation to January 14, 2019.

18.

Cooper's resignation was because of Warren's "constant harassment, talking down to, threatening of my job and verbal abuse that I receive on an almost daily basis from my operations manager, Billy Warren." These facts support the fact that Cooper was constructively discharged.

19.

The City of Kennesaw constructively terminated Plaintiff's employment in violation of Title VII, and prior to the terminated engaged in retaliation under Title VII for Cooper's exercising his legal rights to speak particularly about the racial discrimination he was experiencing, and the apparent policy the City of Kennesaw had undertaken intended to change the racial makeup of its workforce to include more blacks and less whites.

20.

As a direct result of Defendant's actions, Cooper lost wages, the value of benefits, future income, the value of future fringe benefits, and opportunities for advancement, all in amounts to be proven at trial. And, Defendant acted intentionally to harm Cooper, and is therefore liable to Cooper for punitive damages in an amount to be determined in the enlightened conscience of the jury.

COUNT ONE—TITLE VII CLAIMS FOR RACE and COLOR

DISCRIMINATION

21.

The City of Kennesaw unlawfully discriminated against Cooper as to the terms and conditions of his employment because of his race and/or color in violation of 42 USC 2000e, by imposing racially-based discipline and harassment on Cooper for an extended period of time.

22.

Cooper suffered damages as a result of the City of Kennesaw's race and color discrimination while he was employed by the City of Kennesaw.

23.

As a result of the City of Kennesaw's discriminatory conduct, Cooper suffered lost compensation and benefits including paid time off, in an amount to be proven at trial.

24.

As a result of the City of Kennesaw's discriminatory conduct, Cooper suffered extreme emotional distress and mental anguish.

25.

Cooper is entitled to a judgment against the City of Kennesaw for the compensation he lost and for compensatory damages for the emotional distress and mental anguish he suffered as a result of the City of Kennesaw discriminatory conduct while Cooper was employed by the City of Kennesaw, in an amount to be proven at trial.

26.

In addition, because of Kennesaw's discriminatory conduct constructively discharged Cooper by targeting him to be fired with no escape, Cooper, suffered lost wages and benefits, and significant damages to his future employment prospects after he was constructively discharged.

27.

Accordingly, Cooper is entitled to recover back pay and benefits, front pay, compensatory damages, punitive damages, attorney's fees, and other relief under Title VII and all other federal statutes providing remedies for violations of Title VII from Kennesaw.

## COUNT TWO—TITLE VII RETALIATION

28.

By complaining about how he was being treated by Warren to the City of Kennesaw's HR and to others in the management structure of the City of Kennesaw, particularly about the race and color discrimination he was experiencing as an employee of Kennesaw, Cooper was engaging in protected activity under Title VII.

29.

Instead of stopping its discriminatory practices, the City of Kennesaw intensified its adverse employment actions against Cooper and gave Warren free reign to

harass and threaten Cooper more, which Warren then did all the way up to Cooper's termination.

30.

Cooper is entitled to a judgment against the City of Kennesaw for back pay and benefits, front pay, compensatory and punitive damages, attorney's fees and all other appropriate damages, remedies, and other relief available under Title VII for retaliation and under all federal statutes providing remedies for violations of Title VII constituting retaliation.

## COUNT THREE—PUNITIVE DAMAGES

31.

The City of Kennesaw has acted with a specific intent to harm Cooper such that it is liable to Cooper for punitive damages without cap in an amount sufficient to deter the City of Kennesaw from ever again acting with specific intent to ham another of its employees or another person.

32.

The City of Kennesaw through Warren discriminated against Cooper. Warren was high up enough in the city of Kennesaw's hierarchy, so that Warren conduct is sufficient to impose punitive damages.

33.

In addition, and alternatively management of the city of Kennesaw countenanced or approved of Warren's discriminatory behavior toward Cooper, making the City of Kennesaw liable to Cooper for punitive damages.

Prayer for relief

**WHEREFORE**, Cooper demands relief against the City of Kennesaw as follows:

1. A judgment for Cooper against the City of Kennesaw for (a) backpay from January 14, 2019 until the time of trial, in an amount to be proven at trial, plus the value of the benefits Cooper lost as a result of his departure from employment by the City of Kennesaw in an amount to be proven at trial;

(b) Front pay as contemplated by Title VII;

(c) Compensatory damages for emotional distress caused by the racial discrimination, harassment, threats and retaliation Cooper suffered at the hands of the City of Kennesaw;

(d) Special damages for all of the out-of-pocket costs and expenses Cooper have incurred and has and will incur as a proximate result of Defendant's discriminatory conduct;

(e) Attorneys' fees calculated and awarded based on the reasonable rates for the time counsel has expended, enhanced by the lodestar analysis as the Court deems appropriate;

(f) Punitive damages against the City of Kennesaw in an amount to be determined in the enlightened conscience of the jury;

2. Trial by Jury,

3. Such other and further relief as the Court deems just and proper.

Respectfully submitted this 1st day of June, 2021.


**DALZIEL LAW FIRM**

*s/ Charles M. Dalziel, Jr.*

Charles M. Dalziel, Jr.

Georgia Bar No. 203730

31 Atlanta Street Suite 200

Marietta GA 30060

404-735-

0438 chuck@dalziellawfinn.c

om Attorney for Plaintiff